FILED

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CTIA – THE WIRELESS ASSOCIATION,

      Plaintiff,

vs.

Case No.: 8:17-cv-1885-T-23 AEP

CITY OF TAMPA,

      Defendant.

_____/

### *COMPLAINT*
*(Expedited Relief Requested)*

Plaintiff, CTIA—The Wireless Association® hereby sues the Defendant, City of Tampa,

and as grounds therefore, states as follows:

### *INTRODUCTION*

This action arises out of an unlawful ordinance enacted by the City of Tampa ("City")

that prohibits the acceptance and processing of applications to place small wireless facilities in

the public rights-of-way, as well as the issuance of permits for such facilities, for 120 days. The

ordinance violates both federal and State law and, pursuant to 47 U.S.C. § 332(c)(7)(B)(v),

Plaintiff CTIA – The Wireless Association® ("CTIA") seeks injunctive and declaratory relief on

an expedited basis.

      1.    The federal Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.* (the

"Telecommunications Act" or the "1996 Act"), preempts State and local decisions that "prohibit

or have the effect of prohibiting the provision of personal wireless services," and requires that

State and local governments "act on any request for authorization to place, construct, or modify

TPA045163

personal wireless service facilities within a reasonable period of time after the request is duly filed." 47 U.S.C. § 332(c)(7)(B).

2.      The City violated Section 332(c)(7)(B) when it adopted Ordinance No. 2017-115 (the "Ordinance," a copy of which is attached hereto as Exhibit A). The City Council approved the Ordinance on July 13, 2017, and it was approved by Mayor Bob Buckhorn on July 19, 2017. The Ordinance prevents the City from acting within a reasonable time upon a request to place small wireless facilities in the public rights-of-way, because pursuant to that Ordinance the City refuses to act *at all* upon such requests.

3.      The Ordinance also violates Florida law. In particular, Florida House Bill 687[1], which amended Section 337.401, Florida Statutes, effective July 1, 2017, mandates that the City "shall accept applications for permits and shall process and issue permits," and shall do so within certain time periods. § 337.401(7)(d), Fla. Stat. (2017). The City's ban on the acceptance, processing, and issuance of small wireless facility permits flouts this State law.

### *THE PARTIES*

4.      Plaintiff CTIA is a District of Columbia not-for-profit corporation with its principal place of business in Washington, D.C. CTIA represents all sectors of the wireless industry, including but not limited to providers of wireless services.

5.      CTIA has associational standing to bring this action.

> An association ... has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Sierra Club v. Johnson*, 436 F. 3d 1269 (11th Cir. 2006) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *accord Nat'l Ass'n of Professional Allstate Agents v. Allstate*

---

[1] CS/CS/HB 687 Compiled at Chapter 2017-136, Laws of Florida.

*Ins. Co.*, 2002 WL 3494069 at \*4; Case No. 8:01-cv-2137-T-24MSS (M.D. Fla. April 22, 2002) (denying motion to dismiss and determining association of professional insurance agents had standing to bring suit on behalf of its members). *See also Doe v. Stincer*, 175 F. 3d 879, 882 (11th Cir. 1999) ("It has long been settled that an organization has standing to sue to redress injuries suffered by its members without a showing of injury to the association itself and without a statute explicitly permitting associational standing.")

6.     One or more of CTIA's members would have standing to sue in their own right, as those members are directly affected by the challenged Ordinance. CTIA's members include wireless companies that deploy small cell wireless facilities in the public rights-of-way, and whose existing or planned permit applications for such installations are banned by the Ordinance.

7.     The City's public permitting records show multiple permit applications filed since July 1, 2017 that the City refused to accept, submitted by several different applicants including CTIA members. Among others, the City refused to accept four different small wireless facility applications on July 13, July 20, and July 21, stating in each instance: "Pursuant To Ordinance 2017-115, The City Of Tampa Has Imposed An Abatement Upon The Acceptance Of Applications For, The Processing Of, And The Issuance Of Permits Related To Small And/Or Micro Wireless Facilities In The Public Right-Of-Way. This Application Is Deemed NOT ACCEPTED At This Time." One CTIA member also had multiple small wireless facility permit applications pending at the time the Ordinance became effective, which the City subsequently has refused to process.

8.     The relief sought in this action involves real and present cases and controversies in that the City has refused to consider prior filed applications and refused to even accept more recently submitted applications.

9.      In addition, the interests that CTIA seeks to protect in this lawsuit are germane to CTIA's purpose, and neither the claims asserted nor the relief requested require the participation of individual members in this lawsuit.  To protect its interests and advocate for its members, CTIA has often intervened as a party in civil matters affecting the wireless industry—including matters relating to the siting of wireless facilities. *See, e.g., Montgomery County v. FCC*, 811 F.3d 121 (4th Cir. 2015) (intervening as respondent in appeal regarding FCC order implementing federal statute under which local applications for wireless facility modification requests are deemed granted after sixty days).

10.     Defendant City is an incorporated municipality and sovereign entity of the State of Florida, which lies within the specific geographical boundary of the United States District Court for the Middle District of Florida, Tampa Division, and is a legal entity subject to suit.

### *JURISDICTION AND VENUE*

11.     This Court has subject matter jurisdiction over this action pursuant to (a) section 332(c)(7)(B)(v) of the Telecommunications Act because CTIA members have been adversely affected and aggrieved by the City's adoption and enforcement of the Ordinance, (b) 28 U.S.C. § 1331 because this action presents a federal question under the Telecommunications Act, and (c) 28 U.S.C. § 1367 insofar as CTIA raises a claim under Florida law.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this district and the events and/or omissions giving rise to CTIA's claims arose in this judicial district.

## *FACTS*
### *I. Background*

13.     The federal Communications Act establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-wide and worldwide wire and radio communications service with adequate facilities at reasonable charges for the purposes of national defense [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. § 151.

14.     Wireless service is vital to the public safety and for the general welfare of consumers and businesses. From 1993 to 2015, the number of wireless subscriber connections increased thirty-fold, from 12 million to 358 million. *See* Nineteenth Report, *In the Matter of Implementation of Section 6002(b) of the Omnibus Budget Reconciliation Act of 1993, Annual Report and Analysis of Competitive Market Conditions With Respect to Commercial Mobile Services*, DA 16-1061, Table II.E.i, (Sept. 23, 2016).

15.     There are now more wireless subscriptions than landline telephone subscriptions in the United States. For many Americans living in wireless-only homes, working in wireless-only businesses, or while travelling, cell phones are their only lifeline in emergencies. Indeed, recent surveys indicate that nearly half of U.S. adults live in wireless-only households. *Id.* Table VII.C.i. The FCC estimates that about 70% of all 911 calls are placed from wireless phones. *See* http://www.fcc.gov/guides/ wireless-911-services.

16.     To meet the policy goals established by Congress, and provide reliable wireless services to local businesses, public safety entities, and the general public, wireless providers must consistently update their technology, facilities, and networks to keep up with customers' ever-growing demand for mobile services, including mobile data service and wireless phone coverage.

17.     Wireless devices using all-digital technology operate by transmitting a radio signal to antennas mounted on a tower, pole, building, or other structure.  Reliable wireless service requires a network of properly placed antennas with overlapping coverage.  If there is no functioning antenna within a given area, there would be no service for customers within that area and mobile customers who travel through the area will experience an unacceptable level of dropped calls, or the inability to make or receive calls at all.

18.     One of CTIA's key initiatives is to encourage the rapid deployment of next-generation "5G" wireless technology.  A recent study estimates that wireless providers will invest $275 billion dollars over the next decade to deploy 5G to consumers, which is expected to create three million new jobs in communities across the country and boost the U.S. GDP by half a trillion dollars. *Smart Cities: How 5G Can Help Municipalities Become Vibrant Smart Cities*, ACCENTURE STRATEGY (Jan. 2017), https://www.ctia.org/docs/default-source/default-document-library/how-5g-can-help-municipalities-become-vibrant-smart-cities-accenture.pdf.

19.     These new 5G networks will operate, in part, via the utilization of "small cells"— wireless antennas the size of a pizza box, often placed in the public rights-of-way on existing utility poles or similar structures.  Small cells help wireless providers deliver flexible coverage everywhere that people live, work, and play.

20.     By deploying small cells, CTIA's members can better meet the explosive demand for high-speed wireless data services and provide better service to residential and business customers.  The need for deployment of small cells in more populated areas is urgent.  In these areas, current technology is reaching its limits and ever-increasing demands on data consume existing capacity.  But many communities in Florida still have in place ordinances that were designed for older technologies, when wireless infrastructure meant large, so-called "macro"

towers up to 250-feet tall. "The sheer quantity—as well as the drastically reduced footprint—of small cells means that the local rules, rates, and processes for approving these wireless antennas must evolve." *Id.* Further, even communities which have ordinances addressing the placement of small facilities in the public rights-of-way often retain broad discretion that can needlessly delay, impede, or frustrate the installation of small-cell facilities.

## *II. House Bill 687*

21.     In enacting House Bill 687, which became effective on July 1, 2017, the Florida Legislature recognized the importance of the deployment of new small-cell technologies throughout the State, and the need to ensure that local regulation does not preclude, hinder, or delay the deployment of such technologies.

22.     House Bill 687 added the "Advanced Wireless Infrastructure Deployment Act" as new subsection (7) to Florida Statute § 337.401, a pre-existing statute governing the placement of communications facilities in the public rights-of-way.  The new subsection specifically addresses the placement of a "small wireless facility," which is an antenna that fits within an enclosure of six cubic feet or less, along with associated wireless equipment that is cumulatively no more than 28 cubic feet. § 337.401(7)(b)(10)(a) and (b), Fla. Stat. (2017).

23.     Under the new statutory provisions, as a municipality having jurisdiction and control of the rights-of-way of public roads, the City is an "Authority." *Id.* § 337.401(7)(b)(5).

24.     The statute mandates that "[e]xcept as provided in this subsection, an authority may not prohibit, regulate, or charge for the collocation of small wireless facilities in the public rights-of-way." *Id.* § 337.401(7)(c).  Collocation refers to the installation of small wireless facilities on an existing utility pole or wireless support structure, as opposed to the installation of a new pole or support structure. *Id.* § 337.401(7)(b)(7).

25.    The statute further mandates that "[a]n authority shall accept applications for permits and shall process and issue permits" subject to certain specified requirements. *Id.* § 337.401(7)(d). These requirements include that the authority determine and notify an applicant whether its application is complete within 14 days of receiving the application (*id.* § 337.401(7)(d)(7)), that an application is deemed approved if the authority does not approve or deny it within 60 days (*id.* § 337.401(7)(d)(8)), and that an authority shall approve a complete application unless it does not meet the authority's applicable codes (*id.* § 337.401(7)(d)(9)).

26.    The statute requires an authority to adhere to the same timeframes in reviewing applications to place new utility poles in the rights-of-way to support small wireless facilities. *Id.* § 337.401(7)(d)(6), (j).

### III. *The Ordinance*

27.    The City Council passed the Ordinance on July 13, 2017, and it was signed and approved by the Mayor, hence becoming effective, on July 19, 2017.

28.    The Ordinance states that its purported purpose "is to preserve the status quo and enable sufficient time to review, study, hold public hearings, and prepare and adopt any needed amendment or amendments to the City of Tampa Code of Ordinances, relating to the new technology of micro wireless facilities and small wireless facilities as defined in HB 687." Ex. A, p. 2.

29.    The Ordinance "adopts an abatement upon the acceptance of applications for, the processing of, and the issuance of permits, orders or any other official action of City of Tampa permitting or having the effect of permitting, in the right-of-way, the siting of utility poles and collocation with existing utility poles to support small wireless facilities and micro wireless facilities, as defined in HB 687," for a period of 120 days. *Id.*

30.     The Ordinance provides that "[t]he City will not take any action on any application for permit or issue any order or take other official action which would have the effect of allowing or permitting, in the right-of-way, the siting of utility poles and collocation with existing utility poles to support small wireless facilities and micro wireless facilities as defined in HB 687 (2017), except as provided in this ordinance." *Id.* Notwithstanding this last clause, the Ordinance contains no exceptions to its ban on the acceptance, processing, and issuance of permits for small wireless facilities in the public rights-of-way.

### COUNT I - Declaratory Judgment
#### (The Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7))

31.     CTIA incorporates by reference the allegations in each of the paragraphs set forth in paragraphs 1 through 20 and 27 through 30 above.

32.     Although the 1996 Act preserves local zoning authority over the siting of wireless facilities, 47 U.S.C. § 332(c)(7)(A), "the method by which siting decisions are made is now subject to judicial oversight." *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 493 (2d Cir. 1999).  Among other things, Section 332(c)(7)(B)(ii) mandates that a local government "shall act" on any request to place wireless facilities "within a reasonable period of time after the request is duly filed." "Congress implemented the 'reasonable period of time' provision of the TCA to "'stop local authorities from keeping wireless providers tied up in the hearing process' through invocation of state procedures, moratoria, or gimmicks.""' *Masterpage Communications, Inc. v. Town of Olive,* 418 F.Supp.2d 66, 77 (N.D.N.Y. 2005) (citations omitted).

33.     The 1996 Act provides a private right of action to "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality

thereof that is inconsistent with this subparagraph." 47 U.S.C. § 332(c)(7)(B)(v).  Among other things, the City's July 13, July 20, and July 21 refusals to accept permit applications constitute final action or a failure to act upon those permit applications in violation of Section 332(c)(7)(B)(ii).  In addition, the City's enactment of the Ordinance itself was a final action by the City that is inconsistent with Section 332(c)(7)(B)(ii).

34.     The Ordinance is a moratorium that violates Section 332(c)(7)(B)(ii) because, as a result of that Ordinance, the City will not act at all to accept or process applications to place small wireless facilities in the rights-of-way.

35.     While the Ordinance suggests the City needs time to study House Bill 687, it nevertheless violates Section 332 because there is no "legitimate reason for not processing pending applications under existing regulations, while new amendments are being considered." *Sprint Spectrum LP v. Jefferson County*, 968 F. Supp. 1457 (N.D. Ala. 1997).  Indeed, House Bill 687 expressly contemplated that localities might desire to update their ordinances, but rather than provide for a temporary ban on permit applications, stated that localities can apply their pre-existing ordinances, while requiring them to waive any requirements that conflict with the state statute.  § 337.401(7)(g), Fla. Stat. (2017).  Further, House Bill 687 was filed on February 7, 2017 and passed the House and Senate with  110:3 and 33:1 votes, respectively, on April 28, 2017.  Thus, the City already had more than 80 days to study the statute before it passed the Ordinance.

36.     As a result, CTIA is entitled to the relief requested below.

## COUNT II - Declaratory Judgment
### (Violation of Florida Law)

37.     CTIA incorporates here by reference the allegations in paragraphs 1 through 30 above.

38.     The City is an "authority" within the meaning of § 337.401(7), Fla. Stat. (2017).

39.     Section 337.401(7)(c) mandates that "[e]xcept as provided in this subsection, an authority may not prohibit . . . the collocation of small wireless facilities in the public rights-of-way." The Ordinance prohibits the collocation of small wireless facilities in the public rights-of-way, in violation of the statute. No provision in subsection (7) of the statute allows the City to prohibit such collocation for 120 days or for any other period of time while the City purports to review and study the statute.

40.     The City already had more than 80 days to study the statute before it passed the Ordinance, as House Bill 687 was filed on February 7, 2017 and passed the Florida House and Senate with 110:3 and 33:1 votes, respectively, on April 28, 2017. Moreover, the statute already makes provision for the eventuality that a locality might desire to update its ordinances: it provides that localities can apply their pre-existing ordinances, while requiring them to waive any requirements that conflict with the state statute. § 337.401(7)(g), Fla. Stat. (2017).

41.     The statute further mandates that "[a]n authority shall accept applications for permits and shall process and issue permits" subject to certain specified requirements. *Id.* § 337.401(7)(d). Pursuant to the Ordinance, the City refuses to accept applications for small wireless facilities in the public rights-of-way, to process such applications, and to issue permits for such facilities. The Ordinance thus violates the statute.

42.     The statute further requires an authority to review and process applications to place new utility poles in the rights-of-way to support small wireless facilities within the same

timeframes as for a collocation application. *Id.* § 337.401(7)(d)(6), (j).  By imposing a ban on the acceptance and processing of such applications, as well as the issuance of such permits, the Ordinance violates the statute.

43.    As a result, CTIA is entitled to the relief requested below.

### *REQUEST FOR EXPEDITED REVIEW*

44.    The 1996 Act provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v).

45.    CTIA's members have been adversely affected by the City's violation of Section 332.  Accordingly, CTIA respectfully requests a hearing and decision by the Court on an expedited basis as provided in the Act.

### *PRAYER FOR RELIEF*

WHEREFORE, CTIA respectfully prays that this Court grant it relief as follows:

1.    Permit expedited review of the matters set forth in this Complaint;

2.    Enter an order declaring that the Ordinance violates and is preempted by 47 U.S.C. § 332(c)(7);

3.    Enter an order declaring that the Ordinance violates House Bill 687, codified at § 337.401(7), Fla. Stat. (2017), and is null and void;

4.    Enjoin the City and any of its officers, employees, or agents from enforcing the Ordinance;

5.   Require the City and its officers, employees and agents to continue to accept and process applications to place small wireless facilities in the public rights-of-way utilizing its current regulations to the extent they are consistent with the statute;

6.   Enter judgment in favor of CTIA for attorney's fees and costs incurred in this matter; and

7.   Order such other relief as the Court deems appropriate.


Dated: August 9, 2017


Mark J. Ragusa, Esq.
Florida Bar No. 829633
Gunster, Yoakley & Stewart, P.A.
401 E. Jackson Street, Suite 2500
Tampa, FL 33602
(813) 222-6619; Fax: (813) 228-6739
Primary E-mail:        mragusa@gunster.com
Secondary E-mail      tkennedy@gunster.com
                       eservice@gunster.com

and

George S. LeMieux, Esq.
Florida Bar No. 16403
Gunster, Yoakley & Stewart, P.A.
450 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, FL 33301
(954) 468-1300; Fax: (954) 523-1722
Primary E-mail:        glemieux@gunster.com
Secondary E-mail:     gwilkerson@gunster.com
                       eservice@gunster.com

*Trial Counsel for Plaintiff, CTIA – The Wireless Association*

FTL_ACTIVE 5052932.1