**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CTIA-THE WIRELESS ASSOCIATION,**

**Plaintiff,**

**v.** **CASE NO. 8:17-cv-1885-T-23AEP**

**CITY OF TAMPA,**

**Defendant.**
**_______________________________________/**

**MOTION TO DISMISS**

Defendant, CITY OF TAMPA ("City"), by and through its undersigned counsel, moves to dismiss the Complaint (Docket 1) for failure to state a claim under Rule 12(b)(6) and lack of subject matter jurisdiction and states:

## I. Summary

Plaintiff, CTIA – The Wireless Association ("CTIA"), makes unadorned, conclusory accusations that the City's temporary abatement on applications to install certain wireless technologies in the public rights-of-way, violates the federal Telecommunications Act of 1996 ("TCA") 47 USC 332(c)(7)(B) (Count I), and violates a new Florida statute, Fla. Stat. § 337.401(7) (Count II). The Complaint fails to contain enough facts to make these claims for relief plausible on their face and must be dismissed. Moreover, Count I is the only basis upon which this Court might have jurisdiction and that claim must be dismissed with prejudice. The remaining claims, if any, must be brought in Florida state court.

## II. Background

The City, like virtually all local governments in Florida and throughout the country, adopted land development regulations in its Zoning and Land Development Code to address the

siting of personal wireless service facilities, including towers and antennas, consistent with federal law, namely the TCA, and Florida law, which regulates local government processing of such applications in Chapter 365, Florida Statutes, Section 365.172 *et seq*.

As CTIA alleges, most local governments do not have regulations addressing a new breed of wireless technology that providers of wireless communications service and infrastructure providers seek to install in the public rights-of-way. Local governments in Florida did not address such facilities in the public rights-of-way, since at the time of adoption of the TCA and Chapter 365, there were very few requests to site such facilities in the rights-of-way. Such facilities were too large, would not meet setback and zoning requirements, and were otherwise unsuitable from a zoning perspective for installation in the rights-of-way.

As CTIA alleges, Florida adopted this year a new statutory scheme for a very specific set of technology to apply for and be processed for installation in the public rights-of-way. New Section 337.401(7), the Advanced Wireless Infrastructure Deployment Act ("AWIDA") was adopted following numerous hearings and revisions during the 2017 legislative process and a final request for veto that the Governor rejected. It is a very complicated Statute that became more difficult to understand through its various revisions.

As CTIA alleges, it provides generally for applications for the installation in the public rights-of-way for various technologies, including micro wireless facilities, small wireless facilities, collocation of small wireless facilities on authority owned utility poles, new utility poles for collocation of such facilities by wireless infrastructure providers, replacement and make ready work for utility poles to accommodate small wireless facilities, and for wireless support structures. All of these terms are new to Florida law and are defined in AWIDA.

AWIDA provides further for very extensive procedures for how local governments review and process applications for permits, which varies with the specific application for a particular technology. For example, local governments may require registrations with, among other provisions, security funds and performance bonds, may apply zoning codes to wireless support structures, but not to some other technologies, and applications for micro wireless facilities are generally not subject to permitting requirements. The substance of regulations to be adopted by cities and counties, as well as the procedures to implement the statute, are very complex.

### III. Complaint Should Be Dismissed With Prejudice

#### A. The TCA Does Not Apply to Requests to Collocate Facilities on City Owned Property.

It is well-settled that the TCA applies to states and local governments in their regulatory capacity, but does not apply to states and local governments acting in their proprietary capacity with respect to property they own.[1] CTIA alleges that its members have applied and intend to apply to collocate small wireless facilities on City-owned utility poles. **Such requests are not subject to the TCA**.

Without the new Florida Statute, the City could merely deny any request to collocate facilities on City-owned poles. CTIA has also not alleged that the City is acting in its regulatory capacity with respect to requests to locate small wireless facilities and utility poles in certain

---

[1] *Omnipoint Communications, Inc. v. City of Huntington Beach*, 738 F.3d 192 (9th Cir. 2013); *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404 (2d Cir. 2002); *Se. Towers, LLC v. Pickens City, GA*, 626 F. Supp. 2d 1293 (N.D. Ga. 2008). Similarly, Florida Chapter 365, which governs local governments' regulation of personal wireless service facilities, does not apply to requests to install such facilities on government owned property. Section 365.172(13), F.S.: ("Further, notwithstanding anything in this section to the contrary, this subsection does not apply to or control a local government's actions as a property or structure owner in the use of any property or structure owned by such entity for the placement, construction, or modification of wireless communications facilities.") Local governments are free to deny such requests.

locations of the public rights-of-way. Accordingly, CTIA's claims under the TCA (Count I) should be dismissed with prejudice.

**B. This Court Lacks Jurisdiction.**

Jurisdiction in this matter is invoked by the alleged violation of the TCA and alleged supplemental jurisdiction pursuant to 28 U.S.C. § 1367. See Complaint, para. 11. Should this Court dismiss Count I with prejudice, all remaining claims under Count II are state court actions which should be brought in the appropriate venue in the state courts of Florida.

## IV. Alternatively, the Complaint Should be Dismissed with Leave to Amend

**A. TCA Does Not Prohibit Short-Term Abatements of Applications to Install Facilities Addressed in the AWIDA.**

At the least, the Complaint should be dismissed for failure to allege sufficient facts to demonstrate that the TCA applies. The TCA provides that local governments must act on requests to install personal wireless facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.[2]

> (ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

47 U.S.C. § 332(c)(7)(B)(ii).

It is significant that CTIA has not alleged that the technology its members applied to install in Tampa under the Florida Statute are personal wireless service facilities. AWIDA defines the type of facilities that CTIA's members may request to install in the public rights-of-

[2] 47 USC 332(c)(7)(B)(ii). CTIA did not include the complete language from the TCA, omitting "taking into account the nature and scope of the request."

way pursuant to the Statute. It is not clear that such facilities are personal wireless service facilities under the TCA and CTIA has not alleged such facts to establish that they are. Certainly, utility poles that CTIA's members may seek to install in the public rights-of-way under AWIDA, as alleged by CTIA, which may not even have personal wireless service facilities attached, are not addressed by the TCA.[3]

## B. **Tampa's 120-Day Abatement of Applications Does Not Constitute Final Action or a Failure to Act.**

As CTIA acknowledges, the TCA provides that to file an action under 332(c)(7), a person must be adversely affected by "final action or failure to act" by a local government.[4] All that CTIA alleges with respect to this requirement is the following:

> Among other things, the City's July 13, July 20, and July 21 refusals to accept permit applications constitutes final action or a failure to act upon those permit applications…. In addition, the City's enactment of the Ordinance itself was a final action by the City that is inconsistent with Section 332(c)(7)(B)(ii).

Complaint, at 10, para. 33. These allegations are insufficient to establish final action or a failure to act on appropriately filed, complete applications on the part of the City.

The Supreme Court has established what constitutes final action:

> In order for agency action to be "final" and subject to review under Administrative Procedure Act (APA), action must mark consummation of agency's decision making process, rather than merely be tentative or interlocutory in nature, and action must be one by which rights or obligations have been determined or from which legal consequences will flow.

---

[3] The Florida Statute provides that a wireless infrastructure provider, which does not provide wireless service, may apply to install a utility pole in the public rights-of-way, with an attestation that it will be used for collocation of a small wireless facility within 9 months. Accordingly, such application would not be by a provider of personal wireless service.

[4] Complaint at 9-10, para. 33.

*Bennett v. Spear*, 520 U.S. 154, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997). With respect to "final action" by a municipality under the TCA, the Eleventh Circuit has set forth what is required.

> Based on the plain language of the statute, we conclude a 'final action' occurs when the state or local authority issues its written decision. The statute expressly mandates a state or local government's decision to be committed to writing. Until the state or local authority issues its written notification, its task under the statute is not complete. Putting the decision in writing is the last action the authority is statutorily required to take; therefore, the issuance of the written decision is logically the 'final action.'"

*Preferred Sites, LLC v. Troup Cty.*, 296 F.3d 1210 (11th Cir. 2002). The City must have issued written decisions. CTIA did not allege in its Complaint that the City issued written decisions on the applications of CTIA's members. In fact, CTIA's claim is based in part on its members' "planned permit applications" and not actual applications filed with the City.[5] It is inappropriate to allow a claim under the TCA to be based on "planned applications" a wireless service provider may file.

With respect to whether the City's 120-day abatement on processing applications amounts to a "failure to act," courts have recognized that a temporary abatement does not constitute a failure to act. In *Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38 (1st Cir. 2009), the court held that a temporary moratorium would not constitute a final action or failure to act, as a temporary moratorium, by nature of being temporary, is not the consummation of the instrumentality's decision making process and not the administrative agency's last word on the matter.

Similarly, a city's adoption of a temporary moratorium, does not give a party the ability to sue for a violation of the TCA. In *Tennessee ex rel. Wireless Income Properties, LLC v. City*

[5] Complaint at 3, para. 6.

*of Chattanooga*, 403 F.3d 392, 397 (6th Cir. 2005), the court addressed a wireless provider filing a suit under the TCA to challenge a moratorium, and found: "However, under this case, if the plaintiff has not filed an application and just relies on the moratorium to file suit, the moratorium would not itself constitute a final action or failure to act." The court noted that because Nextel had never filed an application for a building permit, or made any other request for the placement or construction of a wireless facility, the township's failure to approve the facility did not constitute a "failure to act" within the language of 47 U.S.C. § 332(c)(7)(B)(v).

CTIA's allegations in this case are that the City's Ordinance, establishing a 120-day temporary abatement on applications under AWIDA, violates the TCA. Such minimal allegations are insufficient to allege final action or a failure to act. Thus, CTIA has not alleged sufficiently a required element to bring an action under the TCA.

### C. <u>Even if the TCA Applied, CTIA Has Not Made Sufficient Allegations That Tampa's Abatement Violates the TCA.</u>

The TCA provides that states and local governments must act on such applications within a reasonable time. The FCC established a "shot clock" of 90 days for applications to collocate antennas and 150 days for new towers, as ***presumptively*** reasonable timeframes. The FCC briefly addressed moratoria in its 2014 Wireless Infrastructure Order, finding that they do not toll the running of the shot clocks and that "any moratorium that results in a delay of more than 90 days for a collocation application or 150 days for any other application will be presumptively unreasonable."[6] The FCC, notwithstanding CTIA's urging, declined to rule that moratoria extending longer than the shot clock periods were *per se* unlawful under the TCA, because of its

---

[6] *Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies, Report and Order*, 29 FCC Rcd 12865, 12972, ¶ 267 (2014)("2014 Infrastructure Order").

prior determination that Section 332(c)(7) granted courts the authority to rule on whether a locality had unreasonably delayed action.[7]

Consistent with the FCC's establishment of presumptively reasonable time frames, federal courts have recognized that the TCA does not prohibit short term abatements of applications. In *Sprint Spectrum, L.P. v. City of Medina*, 924 F. Supp. 1036 (W.D. Wash. 1996), the court found that a city's six-month moratorium on issuance of new special use permits for wireless communications facilities did not violate the Telecommunications Act. The moratorium was not a prohibition on wireless facilities and did not have prohibitory effect but, rather, was a short-term suspension of permit-issuing while city gathered information and processed applications. The court further found that Congress did not, by requiring action on request for placement of wireless service facility within a reasonable period of time, intend to force local government procedures onto rigid timetables when circumstances called for study, deliberation, and decision making.

Similarly, in *Nat'l Telecomm. Advisors, LLC v. Bd. of Selectmen of Town of W. Stockbridge*, 27 F. Supp. 2d 284 (D. Mass. 1998), the court found that a town's six-month moratorium on issuance of new special use permits for wireless communications facilities did not violate the TCA's requirement that local governments act on applications for personal wireless service facilities within a reasonable time. The court indicated that there was nothing in the record that suggested that the moratorium was other than a necessary and bona fide effort to act carefully in a field with rapidly evolving technology.

Thus, while CTIA alleges in conclusory fashion that the City's abatement is a violation of Section 332(c)(7), it has not alleged how the City's 120-day abatement is unreasonable.

---

[7] Compare to the Spectrum Act, which expressly prohibits moratoria to a limited, very specific type of application, and which the FCC determined should be acted upon by local governments within 60 days. See Spectrum Act, § 6409(a), 47 U.S.C. §1455; 47 C.F.R. § 1.40001(c)(2), (c)(4).

Contrary to CTIA's suggestion that the TCA prohibits the use of an abatement in all circumstances, the TCA merely prohibits the use of such procedures in an effort to "unreasonably" delay taking action on a properly filed siting application.

CTIA cites *Masterpage Communications, Inc. v. Town of Olive,* 418 F.Supp.2d 66 (N.D.N.Y. 2005), in its effort to support its claim that the Telecommunication Act's "reasonable period of time" provision is meant to "stop" local authorities' use of moratoria.[8] CTIA's reliance on this case is misplaced. First, the applicant in *Masterpage* sought to locate a 180-foot tower on private property (rather than small or micro wireless facilities in the public rights-of-way). The moratorium enacted by the Town of Olive prevented the applicant from filing a special use permit for a personal wireless service facility (a tower). The City's ordinance adopted an abatement, as opposed to a moratorium, and permits the filing of special use permits for personal wireless service facilities. The town's moratorium and subsequent extensions lasted from June 1998 until July 2000.

The City's ordinance is in effect, at most, for 120 days. It was undisputed that the town had no wireless telecommunications facilities and experienced large gaps in wireless and cellular coverage (allegations totally lacking in the CTIA's Complaint). Further, the town's moratorium – which was enacted to provide the town with sufficient time to "write and enact local legislation regarding the siting of wireless facilities" pursuant to the TCA – was imposed more than a year after the enactment of the TCA.

The City adopted its abatement ordinance before HB 687 was signed into law and it was effective on July 19, 2017, less than three weeks after the July 1, 2017 effective date of HB 687. CTIA's Complaint does not set forth sufficient allegations to demonstrate that the City's temporary 120-day abatement Ordinance should be viewed more like the 2+-year moratorium in

[8] Complaint, at 9, para. 32.

*Masterpage* as opposed to the short-term suspension upheld in *Sprint Spectrum, L.P. v. City of Medina*.

**D. <u>AWIDA Contemplates Temporary Abatements on Applications.</u>**

CTIA incorrectly claims that the City's 120-day abatement on applications for facilities pursuant to AWIDA violates AWIDA's provisions for municipalities to process such applications. AWIDA expressly provides **time** for cities and counties to implement it.

AWIDA, notwithstanding its very comprehensive procedures and time frames for municipalities and counties to process and to review applications, does not prohibit local governments from adopting abatements or zonings in progress to afford time to adopt appropriate ordinances to implement the statute. Quite the contrary, AWIDA mandates that all counties and municipalities in Florida adopt regulations to implement the statute and provides for time to do so. The Legislature recognized that local governments will need time to consider and to adopt appropriate regulations. Thus, AWIDA affords time for local governments to adopt suitable regulations before they must process such applications. The Statute provides, in pertinent part:

> By the later of January 1, 2018, or 3 months after receiving a request to collocate its first small wireless facility on a utility pole owned or controlled by an authority, the person owning or controlling the authority utility pole shall make available, through ordinance or otherwise, rates, fees, and terms for the collocation of small wireless facilities on the authority utility pole which comply with this subsection.

Section 337.401(7)(f)(5), Florida Statutes. Thus, under AWIDA, the City has at least until January 1, 2018, to adopt appropriate rates, fees and terms for collocation of small wireless facilities on the City's utility poles.[9]

---

[9] Utility Pole is defined to mean a pole or structure used in whole or in part to provide communications services, or for electric distribution, lighting, traffic control, signage, or similar function. Section

CTIA did not allege that AWIDA's January 1, 2018, date or 3-month deadline for the City to adopt rates, fees and terms for collocation of small wireless facilities on the City's utility poles violates the TCA's requirement for action within a reasonable period of time. The City's 120-day abatement on such requests for collocation of small wireless facilities on its utility poles will result in action on such requests well-within the January 1, 2018, deadline required by the Statute.[10]

Further, AWIDA contemplates cities and counties would adopt ordinances to implement it and that such process will take some time. CTIA acknowledged[11] that AWIDA provides that for applications filed "before the effective date of such ordinances," municipalities and counties may apply current ordinances relating to placement of communications facilities in the rights-of-way related to registration, permitting, insurance, indemnification, performance bonds, and other terms and goes on to provide that "permit application requirements and small wireless facility placement requirements, including utility pole height limits, that conflict with this subsection shall be waived by the authority."[12] Thus, AWIDA contemplated the City adopting an ordinance to implement AWIDA, and until adoption of such ordinance, the City may apply its existing

---

337.401(7)(b)(11). The City's poles to accommodate light and traffic signals, as well as other structures used in part for such purposes, are eligible for applications for collocation of small wireless facilities.

[10] The City's staff created a schedule for development of an ordinance to present to the City Council for consideration. Presently, it is planned that the City staff will draft an ordinance for review by affected stakeholders, including communications and infrastructure providers, by September 12th, a meeting with the communications industry and other stakeholders for input is scheduled for September 18th, submission to City Council on September 27th, staff presentation to City Council on October 5th, hearing before City Council for First Reading on October 12th, and hearing for Second Reading of Ordinance on October 26th. Of course, this schedule may be revised based on impacts of Hurricane Irma.

[11] Complaint, at 10, para. 35.

[12] Section 337.401(7)(g), F.S.

code, but must waive provisions that are inconsistent with the statute's provisions for siting small wireless facilities or utility poles in the rights-of-way.[13]

Obviously, considering and preparing an appropriate ordinance to implement AWIDA is not a simple matter. AWIDA preserves municipal and county authority over significant issues that may arise with respect to requests to install such facilities. For example, AWIDA provides that cities and counties may adopt "objective design standards" by ordinance with respect to small wireless facilities.[14]

AWIDA preserves an authority's ability to enforce non-discriminatory requirements that communications facilities be installed underground.[15] Thus, above-ground facilities may be prohibited in certain areas of the rights-of-way. AWIDA further preserves local authority to adopt regulations addressing public safety, clear zones, ADA requirements, preservation of historic areas and properties, homeowner association restrictions, and other regulations on the siting of such facilities in the rights-of-way.

Moreover, local governments may deny applications for such facilities if they do not meet "applicable codes," including the building, fire, electrical, plumbing, or mechanical codes as well as local governments' codes.[16] Development and implementation of ordinances to

[13] It is worth noting that the City's existing Zoning and Land Development Code contains regulations for siting communications facilities in the right-of-way. However, the City's existing Code would likely prohibit the installation of small wireless facilities and utility poles in many locations in the rights-of-way because of requirements that they be set back certain distances from residential properties. See Tampa Zoning and Land Development Code, Section 27-282.6 (c). Such set back restrictions are not prohibited in AWIDA.

[14] Section 337.401(7)(b)(2), F.S.

[15] Section 337.401(7)(i), F.S.

[16] AWIDA also authorizes local governments to provide for *force majeure* events in their ordinances. Section 337.401(7)(d)(12), F.S. Thus, events such as Hurricane Irma could be further grounds to extend the time frame for action on applications.

implement AWIDA is not simple, nor does one community's ordinance apply for other communities.

If the Legislature meant to prohibit cities and counties from adopting short term abatements while they consider and develop such ordinances, it could have done so expressly. Prior to passing AWIDA and, in fact, prior to it being considered by the Legislature, many local governments had already adopted short term moratoria and zonings in progress, so as not to be required to process applications for small cell facilities and wireless facilities in the public rights-of-way until they adopted appropriate regulations.[17]

Thus, when AWIDA was being considered, it was well-known that local governments were adopting procedures to delay consideration of such applications. If the Legislature wanted to prohibit such abatements for applications, it could have done so expressly. On the contrary, the Legislature provided for such time for local governments to implement AWIDA. Accordingly, the City's 120-day abatement to consider a new Ordinance to implement AWIDA is not only consistent with the new Statute, it is entirely reasonable.

Given the complexity of an ordinance to address a particular local government's policies regarding these issues, many local governments throughout Florida adopted abatements and zonings in progress, similar to the City's abatement, to afford sufficient time to consider and to adopt appropriate ordinances.[18]

---

[17] For example, the city of Fort Lauderdale adopted a moratorium in 2014, which it extended for 2 years until it adopted a 65-page ordinance establishing regulations on such facilities in the rights–of-way. http://www.sun-sentinel.com/local/broward/fort-lauderdale/fl-fort-lauderdale-dropped-calls-20161126-story.html

[18] Even without considering the time to prepare an ordinance addressing such complicated substantive matters, adopting any ordinance involves time-consuming procedures that require generally several public hearings, with applicable notice, advertisement, and time between hearings. In a best-case scenario, it would take months to adopt an ordinance to satisfy public hearing and notice requirements.

The City also decided to build in time for development of its ordinance to obtain input from interested industry members and stakeholders regarding its ordinance which, while not required under AWIDA, is generally a good practice to give relevant stakeholders an opportunity for input.[19]

Accordingly, the City's 120-day abatement is entirely consistent with Section 337.401(7) and appropriate. The abatements, zonings in progress, and other steps adopted by hundreds of municipalities and counties throughout Florida are consistent with the City's Ordinance and Section 337.401(7).

## V. Court Action at this Time is Unripe.

CTIA has not alleged in this case that the City determined to permanently refuse to take action on otherwise qualified applications for small wireless facilities. Quite the contrary, CTIA takes issue with Tampa's 120-day abatement on considering such applications and potential applications its members may file. Because the City has not issued final determinations on any pending applications, CTIA's lawsuit is unripe. Judicial intervention at this time would be contrary to Article III of the U.S. Constitution and well-settled law that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *McKart v. United States*, 395 U.S. 185, 193 (1969); see also *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967) ("injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution.").

[19] In fact, the evidence will show that many of CTIA's members requested such opportunity for input outside of a public hearing forum.

This Court has "broad discretion" to determine whether to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citation omitted). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This lawsuit is precisely the type of case that calls for the Court to invoke such discretion. CTIA has not alleged that the City denied applications otherwise appropriate for determination, or even that the City permanently refused to consider such properly filed applications. Rather, CTIA alleges that the City's delayed action on pending applications and applications that may be filed in the future violates federal communications laws. Such allegations are unripe for judicial action.

**VI. CTIA's Allegations are Insufficient to State a Claim Under the TCA or AWIDA.**

CTIA's allegations include almost no information as to the applications its members have filed with the City that were affected by the 120-day abatement. CTIA's allegations do not describe the specifics of the applications, who filed them, the facilities such members seek to locate in the public rights-of-way or even claim that such facilities are covered by the TCA.

At this stage, the City is not challenging the Plaintiff's standing to bring this action. An association has standing to bring suit on behalf of its members when:

1. Its members would otherwise have standing to sue in their own right;
2. The interests the association need to protect are germane to the organization; and
3. Neither the claims asserted nor the relief requested require the participation of individual members to the lawsuit. See, generally, *Hunt v. Washington State Apple Advert.*

*Commission*, 432 U.S. 333 (1977); *Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999).

There must, however, be sufficient allegations which would indicate that a particular member would have standing to bring suit. It is impossible from the vague allegations in the Complaint to determine if any member has filed a valid application and, if so, what the member was requesting. The Complaint does not give the City fair notice of what it is facing.

## VII. Standard

### A. A Complaint Must Contain Enough Factual Allegations To Make the Claims Facially "Plausible."

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require detailed factual allegations, but it demands more than unadorned, conclusory accusations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain enough facts to make a claim for relief "plausible on its face." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012). A claim is "plausible" when the plaintiff pleads factual content allowing the court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In assessing whether a "plausible" claim is alleged, the Court must accept as true all of the allegations. *Id.* But this tenet is "inapplicable to legal conclusions," which "must be supported by factual allegations." *Id.*

Complaints must also give defendants "fair notice" of the relief sought and the grounds on which the claims rest. *Liebman v. Deutsche Bank Nat'l Trust Co.*, 462 F. App'x 876, 878 (11th Cir. 2012) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). A complaint does not give "fair notice" if plaintiffs or defendants are lumped together. *Waithe v. Arrowhead Clinic, Inc.*,

491 F. App'x 32, 38 (11th Cir. 2012); *Hu v. Windhaven Ins. Co.*, No. 8:15-cv-277-T-35TGW, 2015 WL 12835683, at *1 (M.D. Fla. Mar. 16, 2015).

**B. The Scope of the District Court's Review Includes (1) the Four Corners of the Complaint, (2) Exhibits to the Complaint, (3) Extrinsic Documents Central to Plaintiff's Claims, and (4) Judicially Noticed or Public Record Information.**

On a Rule 12(b)(6) motion to dismiss, the scope of the court's review is generally limited to the four corners of the complaint. *Speaker v. U.S. Dep't of Health & Human Servs., Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). But there are exceptions. The district court can also consider any exhibits attached to the complaint. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). And, if the allegations of the complaint conflict with the contents of an exhibit, the exhibit controls. *Id.*

The district court's review is not limited to just the complaint and exhibits, however. It may also consider an extrinsic document if "it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Secs.*, LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). And finally, courts may consider matters that are judicially noticeable or of public record. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). All of these matters addressed in the City's Motion to Dismiss may be considered on a Rule 12(b)(6) motion to dismiss without converting it to a motion for summary judgment.

## VIII. Conclusion

The Complaint fails to contain any allegations which would entitle the Plaintiff to pursue a violation of the TCA. Count I should be dismissed with prejudice. If Count I is dismissed with prejudice, the Plaintiff's claim for federal jurisdiction fails. At a minimum, the Complaint should be dismissed for its failure to contain sufficient facts showing either a violation of the TCA or AWIDA. Dismissing the Complaint will enable the Court and the parties to narrow this proceeding, streamlining discovery and the path to resolution. See, *Paylor*, 748 F.2d at 1127

(warning of a "discovery rodeo" if a shotgun complaint is allowed to persist, and encouraging defendants to narrow the case).

*/s/ Robert E. Johnson*
ROBERT E. JOHNSON, ESQ.
Florida Bar No. 342955
LEAD TRIAL COUNSEL
GrayRobinson, P.A.
401 E. Jackson Street, Suite 2700 (33602)
Post Office Box 3324
Tampa, FL 33601
(813) 273-5000
(813) 273-5145 (facsimile)
Primary E-mail: rjohnson@gray-robinson.com
Secondary E-mail: pgatlyn@gray-robinson.com and Valerie.Taylor@gray-robinson.com

and

GARY IRWIN RESNICK, ESQ.
Florida Bar No. 54119
GrayRobinson, P.A.
401 E. Las Olas Blvd., Suite 1000
Fort Lauderdale, FL 33301
(954) 761-8111
(954) 761-8112
Primary E-mail: gresnick@gray-robinson.com
Secondary E-mail: Jenny.Sica@gray-robinson.com
Application for General Admission approved/Admission Ceremony pending

*Attorneys for Defendant, City of Tampa*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on September 18, 2017, a true and correct copy of the foregoing was filed with the Clerk, U.S. District Court, using the CM/ECF electronic filing service, which will send a copy of the filing to all counsel of record.

*/s/ Robert E. Johnson*
Attorney