UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CTIA – THE WIRELESS ASSOCIATION, )
)
        Plaintiff, )
)
  vs. )   Case No.: 8:17-cv-1885-T-23AEP
)
CITY OF TAMPA, )
)
        Defendant. )
)

***PLAINTIFF, CTIA – THE WIRELESS ASSOCIATION'S RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS***

Plaintiff, CTIA–The Wireless Association ("CTIA"), by and through its undersigned counsel, hereby submits its response in opposition to the Motion to Dismiss [Doc. #24] (the "Motion") filed by Defendant City of Tampa ("City").

## I. *Introduction*

The City's Motion rests upon a false premise: that "CTIA alleges that its members have applied and intend to apply to collocate small wireless facilities on City-owned utility poles," where the City asserts it acts in a proprietary capacity (*i.e.*, as a landlord) rather than a regulatory capacity. Motion at 3. The City does not provide any citation to CTIA's Complaint [Doc. #1] to support this premise, and in fact, the Complaint says nothing about the placement of small wireless facilities on City-owned poles. To the contrary, the complaint references multiple permit applications that *the City's own public records* show were applications to place new utility poles, not to collocate on City-owned poles. *See* Complaint ¶ 7.

Any suggestion by the City that the Complaint was too vague to put the City on fair notice of these permit applications (*see* Motion at 16) is specious. For example, the Complaint references three specific dates on which the City refused to accept four different small wireless

1

facility applications, and even quoted the specific language the City provided in its written rejection of the applications: "Pursuant To Ordinance 2017-115, The City Of Tampa Has Imposed An Abatement Upon The Acceptance Of Applications For, The Processing Of, And The Issuance Of Permits Related To Small And/Or Micro Wireless Facilities In The Public Right-Of-Way. This Application Is Deemed NOT ACCEPTED At This Time." Complaint ¶ 7. The City certainly knows what permit applications it received and refused to accept using this language—and knows they were not limited to requests to collocate facilities on City-owned poles.[1]

The reason the City invented a false premise upon which to base a motion to dismiss is plain. The City is attempting to avoid any decision on the merits of the lawfulness of its Ordinance, and instead is hoping to run out the clock. Applications to rent City-owned poles for the placement of facilities may not be subject to the federal law at issue here, and the Florida statute at issue may give local governments more time to develop rates and other terms for such placements. But the same is not true of applications to place small wireless facilities on non-City property, like existing or new utility poles. Contrary to the City's suggestion, CTIA's complaint is more than sufficient to state claims that the City has violated these laws in adopting and enforcing a 120-day moratorium on the acceptance of small wireless facility applications, and those claims are ripe for adjudication. As explained further below, the City's motion to dismiss is without merit, and should be denied.

---

[1] The four referenced permit applications, which are public records of which this Court can take judicial notice, are attached hereto as Exhibits 1-4. These were obtained directly from the online Citizen Access Portal of the City's Planning & Development Department, at https://aca.tampagov.net/citizenaccess/, and are self-authenticating and admissible under Fed. R. Evid. 902. Each application includes a short project description, along with detailed construction plans (among other information). Exhibit 1, for example, shows that the permit application was for "[i]nstallation of new 50' concrete pole for New Cingular Wireless PCS, LLC to provide small cell telecommunication service." In addition to these four applications, at least 18 additional permit applications for small cell facilities were submitted to the City in July of 2017, all of which the City refused to accept (and all of which are publicly available from the same City website).

2

## II. *Argument*

### A. *The City's Request For Dismissal With Prejudice Is Baseless.*

For purposes of the City's motion, CTIA does not contest that 47 U.S.C. § 332(c)(7)(B) (part of the federal Telecommunications Act of 1996, or "TCA") does not apply to a decision a local government makes in its proprietary capacity with respect to property it owns, such as a decision whether to lease municipal property to a private company, including to a wireless provider for the installation of wireless facilities. However, as explained above, and contrary to the City's assertion, CTIA's Complaint says nothing about the placement of wireless facilities on City-owned utility poles. Instead, it refers to right-of-way permit applications that the City invoked the Ordinance to reject that on their face are to place small cell facilities on new poles, not City-owned poles.

As to these permit applications, the City does not (and cannot) argue that 47 U.S.C. § 332(c)(7)(B) is inapplicable. Instead, it argues CTIA committed a pleading error by failing to allege the City is acting in its "regulatory capacity." Motion at 3. CTIA was not required to include any such specific allegation in its Complaint. *See, e.g.*, *Hill v. State of Florida Dept. of Health & Rehab. Services*, 715 F. Supp. 346, 349 (M.D. Fla. 1989), *modified*, 1989 WL 250930 (M.D. Fla. Sept. 7, 1989) (under Fed. R. Civ. P. 8 notice pleading, a plaintiff need only "set out 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" and need not allege "ultimate facts"). A complaint should contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]o survive a motion to dismiss under Rule 12(b)(6), a complaint 'does not need detailed factual allegations,'"; rather, the "allegations 'must be enough to raise a right to relief above the speculative level.'" *Sec'y of Labor v. Labbe*, No. 08-12120, 319 F. App'x 761, 763 (11th Cir. 2008). In any event, the City plainly was acting in its "regulatory capacity" when it passed the Ordinance refusing to accept or

3

process applications to place small cell facilities in the public rights-of-way—including facilities not placed on City-owned poles—and when it invoked that Ordinance to refuse to accept specific permit applications to install small cell facilities on new, non-City utility poles. The applications were for the issuance of right-of-way permits, not for leases of City property. The City does not contest that 47 U.S.C. § 332(c)(7)(B) applies to such applications.[2]

Finally, because the City's request that CTIA's federal claim be dismissed with prejudice has no basis, its request for dismissal of CTIA's state law claim, over which the Court has supplemental jurisdiction, should also be denied.

### B. The City's Request For Dismissal Of CTIA's Federal Law Claim With Leave To Amend Also Should Be Denied.

The City also asserts three alternative bases for dismissal, with leave to amend, of CTIA's claim that the Ordinance violates the mandate of federal law that a "local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request." 47 U.S.C. § 332(c)(7)(B)(ii). The City's assertions miss the mark.

#### 1. The Complaint adequately alleges that the City has obstructed the installation of personal wireless service facilities.

The City suggests that CTIA has failed to allege the technology its members seek to install are "personal wireless service facilities" within the meaning of 47 U.S.C. § 332(c)(7)(B)(ii).[3] Motion at 4-5. In particular, the City speculates that some CTIA members might seek to install bare utility poles without any attached personal wireless service facilities, as

---

[2] Moreover, even if CTIA were somehow required to expressly allege the City was acting in its regulatory capacity in invoking the Ordinance to refuse to accept permit applications, then the proper course would be to permit CTIA to amend the Complaint to include such an express allegation. In no event would the City be entitled to dismissal with prejudice, as it requests.

[3] The FCA defines "personal wireless service facilities" as "facilities for the provision of personal wireless services," which includes "commercial mobile services." 47 U.S.C. § 332(c)(7)(C).

the Florida statute allows a wireless infrastructure provider that does not provide wireless service to install such poles. *Id.* The City's argument fails for multiple reasons.

Under Fed. R. Civ. P. 8, CTIA is required to plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." CTIA's allegations that the Ordinance violates section 332 necessarily presume that the wireless facilities at issue constitute personal wireless service facilities, whether or not there is a separate express allegation regarding that ultimate fact. Again, the federal rules incorporate notice pleading, not the "ultimate facts" standard of Florida state courts. *See Taylor v. Am. Honda Motor Co.*, 555 F. Supp. 59, 61 (M.D. Fla. 1982).

Further, the allegations of the Complaint are sufficient to put the City on notice that CTIA contends the Ordinance unlawfully prevents the installation of personal wireless service facilities by wireless providers, not just bare utility poles by infrastructure providers. The Complaint alleges that CTIA's members include "providers of wireless services" (¶ 4), and that it's "members include wireless companies" whose existing permit applications are banned (¶ 6).

Finally, the right-of-way permit applications referenced in CTIA's Complaint (¶ 7) refute the City's suggestion. The permit applications submitted by New Cingular Wireless, for example, were not for bare utility poles without attaching facilities to provide commercial mobile services. Rather, they were to install facilities "to provide small cell telecommunication service," and the construction plans show New Cingular Wireless sought not just to install a pole, but a small cell antenna and associated electronic equipment. *See, e.g.*, Ex. 1. Further, under "Project Information" the application stated: "This is an unmanned facility and will be used for the transmission of radio signals for the purpose of providing public cellular service." *Id.*

### 2. The Ordinance constitutes a "final action," as do the City's written rejections of the permit applications.

The City also suggests there has been no "final action or failure to act" as required to bring a claim under 47 U.S.C. § 332(c)(7). Motion at 5-6. The City is wrong.

CTIA challenges the Ordinance itself, not merely individual permitting decisions (the context in which most section 332(c)(7) litigation arises). The City's adoption of the Ordinance was an "action," and it also was "final"—the Ordinance was passed, was signed by the Mayor, and went into effect on July 19, 2017 . *See, e.g.*, *Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Regional Planning Agency*, 24 F. Supp. 2d 1062, 1067 (E.D. Cal. 1998) ("The Ordinance's adoption on June 25, 1997 constituted 'final action by the agency.'"). It is this "final action," the adoption of the Ordinance itself, that CTIA contends violates the TCA.

While the City might later (after expiration of its moratorium) accept, process, and approve or reject permit applications, those hypothetical future actions would not somehow disturb the finality of the City's action in adopting the Ordinance. It is the City's very refusal to accept, process, and approve or reject permit applications *now*, based on the City's final action in adopting the Ordinance, that CTIA contends violates the TCA.

The authorities cited by the City do not help it. The City first points (at 5-6) to the standard for "final" agency action under the Administrative Procedure Act ("APA"). No review under the APA is at issue here. But even if it were, the adoption of the Ordinance would constitute "final" action, as it marked the consummation of the City's decision about whether to currently accept and process small wireless facility applications, and that decision has concrete legal consequences (*i.e.*, the City has already enforced the Ordinance by refusing applications).

The City next cites *Preferred Sites, LLC v. Troup Cty.*, 296 F.3d 1210 (11th Cir. 2002), for the proposition that a "final action" under section 332(c)(7) does not occur until a locality

commits its decision to writing. Motion at 6. Putting aside the fact that *Preferred Sites* concerned a challenge to a denial of a conditional use permit, and not a challenge of an ordinance, there are "written decisions" here. The Ordinance itself is in writing, and is a final action in writing refusing to accept or process small wireless facility permits.

In addition, the City's assertion (at 6) that the Complaint does not allege the City issued written decisions on the applications of CTIA's members simply ignores the Complaint. In fact, as the City knows full well, it did issue written decisions. As alleged in the Complaint and as explained above, the City stated in writing: "Pursuant To Ordinance 2017-115, The City Of Tampa Has Imposed An Abatement Upon The Acceptance Of Applications For, The Processing Of, And The Issuance Of Permits Related To Small And/Or Micro Wireless Facilities In The Public Right-Of-Way. This Application Is Deemed NOT ACCEPTED At This Time." Complaint ¶ 7. In addition, the City's own public records demonstrate that it has "Closed" the applications that are the subject of this lawsuit, which is another clear indication of finality. *See, e.g.*, Exs. 1-4; https://aca.tampagov.net/CitizenAccess/# (search Row-17-0000954).[4]

The City also argues that the planned permit applications of CTIA's members are insufficient to give rise to a current claim under the TCA. Motion at 6. Since the City has already undertaken final action (in writing) in both adopting the Ordinance and in refusing actual permit applications, CTIA need not rely on planned permit applications for its TCA claim. However, those planned permit applications do give rise to a TCA claim, even though they have not been submitted to the City. As Judge Conway explained, in *Sprint Spectrum, L.P. v. City of Medina*, 924 F. Supp. 1036 (W.D. Wash. 1996), the district court entertained a facial challenge under the

---

[4] Even if the City had not issued these written decisions, a complete failure to act on permit applications also would be actionable. As the Eleventh Circuit noted, "a state or local government or instrumentality thereof could not circumvent a party's right to commence an action by not issuing a written decision because the TCA also provides a party may file an action for a failure to act." *Preferred Sites*, 296 F.3d at 1217 n.5.

TCA to an ordinance imposing a moratorium, and "reasoned, by implication, that the passage of the ordinance constituted final action." *APT Tampa/Orlando, Inc. v. Orange County*, 1997 WL 33320573, at *5 (M.D. Fla. Dec. 10, 1997). "[T]he ordinance prohibited parties from applying for a license for a specified period of time," and "[t]herefore, it was futile to apply before bringing a lawsuit." *Id.* The same is true here: in light of the Ordinance and the City's consistent enforcement of that Ordinance in refusing permit applications, it plainly is futile to submit additional applications while the Ordinance remains in effect.

The City's final two citations of purported authority are mystifying. The City cites *Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38 (1st Cir. 2009), for the proposition that courts have held a temporary moratorium does not constitute a final action or failure to act. Motion at 6. *Omnipoint Holdings* held no such thing. It did not address a moratorium, even in dicta. Similarly, the City cites *Tennessee ex rel. Wireless Income Properties, LLC v. City of Chattanooga*, 403 F.3d 392 (6th Cir. 2005), for the proposition that the adoption of a moratorium does not constitute a final action or failure to act under the TCA. Motion at 6-7. Once again, *Wireless Income Properties* held no such thing, and did not address a challenge to a moratorium ordinance. The quote in the City's Motion (at 7) that purports to be the court's finding does not appear in the reported decision.

Even if the case had held what the City suggests it did, it would stand only for the proposition that a TCA suit based on a moratorium is not ripe where no application has been filed. *See* Motion at 7. Here, CTIA members actually filed small wireless facility permit applications, and the City rejected those applications in writing based on the Ordinance. As a result, there plainly has been final action upon which to bring a claim under the FCA.

### 3. *CTIA sufficiently alleged that the City's moratorium violates the TCA.*

The City also asserts that CTIA has failed to sufficiently allege the 120-day moratorium imposed by the Ordinance is unreasonable, in violation of the TCA's requirement that localities act on permit requests "within a reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii). CTIA's allegations, however, are more than sufficient to state a claim. For example, CTIA alleges that the City already had nearly three months to study the new Florida statute, that there is no reason the City could not continue to process permit applications under its existing regulations, and the Florida statute expressly allows localities to apply their existing ordinances (while waiving any requirements that conflict with that statute). Complaint ¶ 35. These allegations are sufficient to state a claim that the City's moratorium is unnecessary and unreasonable.

The City points to the FCC's 2014 "shot clock" order, where the FCC established presumptively reasonable timeframes under section 332(c)(7)(B)(ii) for municipalities to act upon requests to collocate antennas on existing structures (90 days) or to install antennas on new towers or other structures (150 days). The City observes that the FCC "declined to rule that moratoria extending longer than the shot clock periods were *per se* unlawful." Motion at 7. That is true, but it does not help the City. The FCC concluded that "the presumptively reasonable timeframes apply regardless of moratoria," and thus "any moratorium that results in a delay of more than 90 days for a collocation application or 150 days for any other application will be presumptively unreasonable." *Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies*, 29 FCC Rcd. 12865, 2014 WL 5374631, ¶ 267 (2014). The City's 120-day moratorium would delay collocation applications by more than 90 days, and hence even if not *per se* unlawful would be presumptively unreasonable. The FCC explained that "[t]he courts are well situated to assess whether such moratoria are in fact reasonable on a case-by-case basis."

*Id.* But on a motion to dismiss, the City cannot introduce facts to overcome the presumption of unreasonableness, nor can the Court make factual findings.

Further, as the City recognizes, there are a number of cases addressing the lawfulness of moratoria on wireless permits, and they go both ways. As one of the cases the City relies upon makes clear, "other district courts have issued orders pursuant to the TCA forestalling the effect even of first-time moratoria," and "[i]n the end, . . . 'each situation must be independently examined.'" *National Telecommunication Advisors, LLC v. Board of Selectmen of Town of West Stockbridge*, 27 F. Supp. 2d 284, 287 (D. Mass. 1998). The facts and circumstances here are distinguishable from the cases the City relies upon, *Board of Selectmen,* 27 F. Supp. 2d 284, and *Sprint Spectrum, LP v. City of Medina*, 924 F. Supp. 1036 (W.D. Wash. 1996). Both cases concerned six-month moratoria on the issuance of special use permits to allow the localities to examine the land-use and zoning issues raised by the construction of large cell towers, and the courts held that this was reasonable under the circumstances of those cases.

This case, in contrast, does not involve the construction of cell towers. Rather, it concerns the placement of small telephone facilities on utility poles in the public rights-of-way. Utility poles and utility facilities have existed in the public rights-of-way for one hundred years or more. *See, e.g.*, *Loeffler v. City of West Tampa*, 46 So. 426 (Fla. 1908) (tort case involving a collision in Tampa in 1905 between a horse-drawn buggy and a utility pole). Small cell wireless technology may itself be new, but the placement of such small utility equipment and utility poles in the public rights-of-way is not. Indeed, the City has long had a permitting process for the placement of utility equipment in the rights-of-way, including a specific ordinance governing "Communications Rights-of-Way Usage." Tampa Code, Chapter 22, Article IV (§§ 22-320 to -340).

Moreover, as the City admits, the new Florida statute "provides further for very extensive procedures for how local governments review and process applications for permits." Motion at 3. The City thus is not working from a blank slate, as the Florida statute itself sets forth the "very extensive procedures" the City must follow. The statute also indisputably allows the City to implement the statute's requirements even in the absence of any new local ordinance. It states:

> For any applications filed before the effective date of ordinances implementing this subsection, an authority may apply current ordinances relating to placement of communications facilities in the right-of-way related to registration, permitting, insurance coverage, indemnification, performance bonds, security funds, force majeure, abandonment, authority liability, or authority warranties. Permit application requirements and small wireless facility placement requirements, including utility pole height limits, that conflict with this subsection shall be waived by the authority.

Fl. Stat. § 337.401(7)(g).

Thus, this case is more akin to the cases finding moratoria unlawful. The City has an existing permitting process for the placement of facilities in the public rights-of-way, utility poles and equipment have long been placed in the public rights-of-way, and while there is a new governing state statute, that statute itself sets forth "very extensive procedures for how local governments review and process applications for permits." Motion at 3. As a result, the City has no "legitimate reason for not processing pending applications under existing regulations, while new amendments are being considered." *Sprint Spectrum L.P. v. Jefferson County*, 968 F. Supp. 1457, 1466-67 (N.D. Ala. 1997) (holding that moratorium violated the TCA). *See also, e.g.*, *id.* at 1466-67 (noting that while in the *City of Medina* case "the Medina city council acted pursuant to a state statute, explicitly authorizing the imposition of moratoria," "Alabama has no similar statute"); *APT Minneapolis, Inc. v. Stillwater Tp.*, 2001 WL 1640069, at *8 (D. Minn. June 22, 2001) (holding that six-month moratorium violated the TCA where, among other things, the

11

municipality adopted it "after it had already adopted a comprehensive regulatory scheme governing wireless communication facilities," "[u]nlike the moratorium in *City of Medina* which continued to accept and process applications while the moratorium was pending, the Township's moratorium, like that in *Jefferson County* and *City of Farmington,* extends to the 'accept[ance], consider[ation], [and] approv[al] of all wireless communication tower applications," and "[i]t is unclear why, if the Township was merely amending its current ordinance, the Township could not continue to accept and begin preliminary processing of CUP applications"); *Sprint Spectrum L.P. v. Town of Farmington*, 1997 WL 631104, at *6 (D. Conn. Oct. 6, 1997) (holding moratorium violated the TCA because, among other things, "unlike the moratorium in *Medina,* which suspended only permit-issuing while the city gathered information and processed applications, the moratorium here prohibits even the submission of applications").

### C. *The Ordinance Is Inconsistent With The Florida Statute.*

The City's attempt to square its Ordinance with Fla. Stat. § 337.401(7) (the Advanced Wireless Infrastructure Deployment Act ("AWIDA")) falls short. The City asserts that the statute "expressly provides time for cities and counties to implement it," pointing to the provision that gives them until January 1, 2018, at the earliest, to develop rates, fees, and terms for collocating small wireless facilities on City-owned utility poles. Motion at 10 (citing Fla. Stat. § 337.401(7)(f)(5)). The cited provision applies only to applications for collocating on City-owned utility poles. None of the applications in this lawsuit sought such permits. For all other small wireless facility applications—including applications to collocate on non-City-owned poles or to place new poles, including the CTIA member applications the City has already refused—the City identifies no statutory provision permitting such a delay, because there is none.

To the contrary, as to all other applications, the statute is clear: an authority "*shall* accept applications for permits and *shall* process and issue permits" for small wireless facilities in the public rights-of-way, subject to the requirements of the statute. Fla. Stat. § 337.401(7)(d) (emphases added). The Ordinance violates this statutory command because it provides that the City *shall not* accept applications for such permits, or process and issue such permits.

Similarly, the statute provides that "[w]ithin 14 days after receiving an application, an authority must determine and notify the applicant by electronic mail as to whether the application is complete" (Fla. Stat. § 337.401(7)(d)(7)), and "[a] complete application is deemed approved if an authority fails to approve or deny the application within 60 days after receipt of the application" (*id.* § 337.401(7)(d)(8)). Pursuant to the Ordinance, the City has failed and refuses to notify an applicant within 14 days whether its application is complete. Instead, the City has refused to accept applications irrespective of whether they are complete. In refusing to accept applications, the City also has failed and refuses to approve or deny them.

While the statute provides time for localities to adopt rates and terms for collocation on local authority-owned poles, the City's suggestion that that somehow means the statute also contemplates moratoria on all other applications not only lacks support in the actual text of the statute, but runs afoul of the principles of statutory construction. Florida follows the principle of statutory construction that *expressio unius est exclusio alterius* (the mention of one thing implies the exclusion of another). *See Moonlit Waters Apartments, Inc. v. Cauley*, 666 So.2d 898, 900 (Fla. 1996); *Florida Right to Life, Inc. v. Lawson Lamar*, 273 F.3d 1318, 1327 (11th Cir. 2001) (applying canon to Florida law); *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1219 (M.D. Fla. 2002). Because the Legislature expressly provided additional time for one particular species of applications (collocation on local authority-owned poles), this Court must presume that the

Legislature did not intend for such an extension to apply to all other remaining types of applications as well.

Subsection 7(g) of the statute is another such indication of the Legislature's intent. The City is correct that the Legislature contemplated in this subsection that localities might adopt ordinances to reflect AWIDA's requirements. Motion at 11. But the Legislature did not state that localities could refuse to accept and process applications in the interim. Rather, the Legislature provided that a local authority "may apply current ordinances," while waiving requirements "that conflict with this subsection." Fla. Stat. § 337.401(7)(g).

Finally, the City argues that updating its ordinance to reflect the AWIDA statute "is not a simple matter," and "[i]f the Legislature meant to prohibit cities and counties from adopting short term abatements while they consider and develop such ordinances, it could have done so expressly." Motion at 12-13. The City has turned the proper analysis on its head. The question is not whether the Legislature expressly prohibited local moratoria, but whether it has allowed local governments to override the Legislature's commands by enacting moratoria. The Legislature enacted a statute with a direct command to localities (they "*shall* accept applications for permits and *shall* process and issue permits"). The City cites nothing that would support the proposition that localities can flout the commands of a state law until a time of their own choosing, by claiming they need time to comply, unless the Legislature has expressly barred localities from "abating" state law.[5]

### D. *CTIA's Claims Are Ripe.*

The City also asserts that court action is unripe because the City has not "permanently" refused to act on small wireless facility applications. Motion at 14. But CTIA's challenge to the

---

[5] It should go without saying that "[m]unicipal ordinances are inferior to laws of the state," not the other way around. *Thomas v. State*, 614 So.2d 468, 470 (Fla. 1993).

lawfulness of the moratorium Ordinance plainly is ripe. The City has invoked the Ordinance to refuse to accept and process applications for the placement of small wireless facilities in the public rights-of-way, and CTIA alleges that that refusal is unlawful under federal and Florida law, irrespective of what the City might do in the future. CTIA has a ripe claim that the City has violated the law by refusing to accept and process the applications *now*, whether or not the City might accept and process applications after its moratorium expires.

The City also suggests that the Court should stay the case. Motion at 15. That is a transparent attempt to run out the 120-day clock in the hope that the case might become moot, sparing the City from any judicial ruling regarding its unlawful Ordinance. If the City is so worried, it should have immediately repealed the Ordinance after CTIA filed suit. In any event, there is no basis for a stay here, for at least two reasons.

First, a stay would be inappropriate because its sole purpose would be to let the City avoid judicial scrutiny of the lawfulness of an ordinance that, by its very limited-term nature, could repeatedly be enacted yet evade judicial review if courts simply stayed litigation until the ordinances expired. Whether or not the City intends to pass another moratorium, other localities have. For example, on September 7, 2017, the Board of County Commissioners of Hillsborough County approved Ordinance 2017-20, imposing a 60-day moratorium.[6] Indeed, the City suggests (at 14) that these issues affect "abatements, zonings in progress, and other steps adopted by hundreds of municipalities and counties throughout Florida." That smacks of hyperbole, and CTIA is not aware of any such facts, but it nevertheless illustrates the importance of proceeding with this case expeditiously.

---

[6] *See* Ordinance 2017-20, available at:
http://pubrec6.hillsclerk.com/PAV/hillsboroughKWSearch.aspx?appname=BRDOCUMENTS&cqnum=197
(Ordinance #: 17-20 search line).

Second, a stay would be inconsistent with federal law, in particular the TCA. This matter must be considered on an expedited basis, pursuant to 47 U.S.C. § 332(c)(7)(B)(v), which states:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court ***shall hear and decide such action on an expedited basis***. (Emphasis added).

*See also Preferred Sites*, 296 F.3d at 1222 (granting summary judgment based on violation of 47 U.S.C. § 332(7)(B), determining mandatory injunctive relief is appropriate remedy for violation(s) of TCA, and finding no error in district court's determination that remand to local authority "would frustrate the TCA's guarantee of expedited relief").

In short, CTIA's claims are ripe, and there is no basis to stay the proceedings.

### E. *CTIA's Allegations Are Sufficient To Show Standing To Bring A Claim.*

For its final argument, the City does not challenge CTIA's standing, but asserts that CTIA's allegations regarding its members' permit applications are "vague" and the Complaint purportedly "does not give the City fair notice of what it is facing." Motion at 15-16. That is absurd. The Complaint plainly gives fair notice of what the case it about: namely, that CTIA challenges the lawfulness of the Ordinance, because CTIA contends (1) it constitutes a refusal to act on requests to place wireless facilities "within a reasonable period of time" (47 U.S.C. § 332(c)(7)(B)(ii)), and (2) it violates the Florida law requirement that municipalities accept and process permits to place small wireless facilities in the public rights-of-way, and do so within certain timeframes.

The Complaint does not name CTIA's members or recite permit application numbers, but that level of detail is not required. As the City concedes (at 16), Fed. R. Civ. P. 8 "does not require detailed factual allegations." Instead, it requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Complaint

16

contains allegations about CTIA's members and CTIA's standing, specifically addressing each of the factors for associational standing. *See* Complaint ¶¶ 4-9. These allegations are sufficient to make CTIA's claim of standing "plausible on its face." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324-25 (11th Cir. 2012).

The crux of the City's argument seems to be that it purportedly cannot tell what permit applications are at issue and what facilities those applications addressed. But, again, the Complaint references three specific dates on which the City refused to accept four different small wireless facility applications from CTIA members, and the Complaint quoted the specific language the City provided in its written rejection of the applications: "Pursuant To Ordinance 2017-115, The City Of Tampa Has Imposed An Abatement Upon The Acceptance Of Applications For, The Processing Of, And The Issuance Of Permits Related To Small And/Or Micro Wireless Facilities In The Public Right-Of-Way. This Application Is Deemed NOT ACCEPTED At This Time." Complaint ¶ 7. The City certainly can determine which permit applications it rejected using this language and on what dates. And the City can hardly claim not to know what the permit applications were for, as in order to reject them it must have reviewed them to determine they were for "Permits Related To Small And/Or Micro Wireless Facilities In The Public Right-Of-Way" (*id.*) subject to the Ordinance.

### III. *Conclusion*

For the reasons explained above, the City's Motion to Dismiss should be denied in its entirety, Defendant should be required to Answer the Complaint and this cause should proceed for expedited review.

Dated: September 25, 2017

Respectfully submitted,

*/s/ Mark J. Ragusa*
Mark J. Ragusa, Esq.
Florida Bar No. 829633
Gunster, Yoakley & Stewart, P.A.
401 E. Jackson Street, Suite 2500
Tampa, FL 33602
(813) 222-6619; Fax: (813) 228-6739
Primary E-mail: mragusa@gunster.com
Secondary E-mail tkennedy@gunster.com
eservice@gunster.com

and

George S. LeMieux, Esq.
Florida Bar No. 16403
Gunster, Yoakley & Stewart, P.A.
450 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, FL 33301
(954) 468-1300; Fax: (954) 523-1722
Primary E-mail: glemieux@gunster.com
Secondary E-mail: gwilkerson@gunster.com
eservice@gunster.com

***Trial Counsel for Plaintiff, CTIA – The Wireless Association***

Michael T. Sullivan, Esq. (*pro hac vice*)
Hans J. Germann, Esq. (*pro hac vice*)
Mayer Brown, LLP
71 S. Wacker Drive
Chicago, Illinois 60606
(312) 782-0600; Fax: (312) 701-7711
E-mail: msullivan@mayerbrown.com
hgermann@mayerbrown.com

## *CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that on this 25th day of September, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will provide a copy to Robert E. Johnson, Esq. of Gray Robinson, P.A., 401 E. Jackson Street, Suite 2700, Tampa, FL 33602 at rjohnson@gray-robinson.com and Gary I. Resnick, Esq. of Gray Robinson, P.A., 401 E. Las Olas Boulevard, Suite 1000, Ft. Lauderdale, FL 33301 at gresnick@gray-robinson.com

*/s/ Mark J. Ragusa*
Mark J. Ragusa, Esq.

FTL_ACTIVE 5063294.2